UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

FISNIK MAXHUNI,

            Plaintiff,

v.

ALEJANDRO MAYORKAS, et al.,

            Defendants.

23 Civ. 9076 (DEH)

**OPINION AND ORDER**

---

DALE E. HO, United States District Judge:

In this action, Plaintiff Fisnik Maxhuni seeks a writ of mandamus compelling Defendants, various U.S. immigration officials, to act on his pending application for asylum, as well as related relief. Defendants appeared and filed a motion to dismiss Plaintiff's Complaint. *See* ECF No. 10. For the reasons given below, Plaintiff's application for a writ of mandamus is **DENIED** and Defendants' motion to dismiss is **GRANTED**.

**A. Background**

As is necessary to adjudicate Defendants' motion to dismiss, the following facts are drawn from the Complaint, accepting all factual allegations as true and drawing all reasonable inferences in favor of Plaintiff as the non-moving party. *See Buon v. Spindler*, 65 F.4th 64, 76 (2d Cir. 2023).

On July 22, 2019, Plaintiff filed his I-589, an application for asylum and for withholding of removal. *See* Compl. ¶ 9, ECF No. 1. Plaintiff and his family attended their biometrics appointments on August 15, 2019. *See id.* ¶ 12. Almost one year later, on August 11, 2020, Plaintiff emailed the New York Asylum Office of the United States Customs and Immigration Services ("USCIS") regarding his application. *See id.* Ex. C at 3, ECF No. 1-2. On August 13, 2020, USCIS responded that asylum interviews were being conducted on a last-in-first-out ("LIFO") basis and that "every effort is being made to schedule an asylum interview for the

subject case at the earliest available opportunity." *See id.* at 1-2.  Almost three years later, on January 23, 2023, Plaintiff contacted the office of U.S. Senator Charles Schumer.  *See id.* Ex. D at 1, ECF No. 1-3.  On October 16, 2023, or more than four years after Plaintiff filed his asylum application, Plaintiff filed this Complaint in the nature of mandamus, seeking a writ of mandamus and/or injunctive relief, a declaratory judgment, and attorney's fees.  *See id.* ¶ 1.  To date, Defendants have taken no action on Plaintiff's I-589.  *See id.* ¶ 12.

**B.     Mandamus**

The application for a writ of mandamus is denied.  Under the Mandamus Act, district courts have "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  28 U.S.C. § 1361.  Before the Court may exercise the power of mandamus, a plaintiff must show "(1) there is a clear right to the relief sought; (2) the Government has a plainly defined and peremptory duty to perform the act in question; and (3) there is no other adequate remedy available."  *Benzman v. Whitman*, 523 F.3d 119, 133 (2d Cir. 2008); *accord Ngai v. Mayorkas*, No. 22 Civ. 5358, 2024 WL 1346530, at *1 (E.D.N.Y. Mar. 29, 2024).[1]

Plaintiff does not establish a clear right to the relief he seeks.  Under the Immigration and Nationality Act (the "INA"), initial interviews in asylum applications should take place within 45 days and final adjudication should be completed within 180 days of the application.  8 U.S.C. § 1158(d)(5)(A).  However, the same provision that sets forth these time periods also states that "[n]othing in this subsection shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or

---

[1] In all quotations from cases, internal quotation marks, ellipses, brackets, citations, footnotes, and other modifications are omitted unless otherwise indicated.

officers or any other person." *Id.* § 1158(d)(7). Courts in this Circuit have found that this provision bars asylum applicants from establishing that they have a clear right to adjudication within the time periods laid out in § 1158, for purposes of mandamus relief. *See, e.g.*, *Ngai*, 2024 WL 1346530, at *2 ("A legion of courts has held that § 1158(d)(7) unequivocally denies asylum applicants a private right of action to enforce the procedural requirements found in that statute."); *Chen v. Wolf*, No. 19 Civ. 9951, 2020 WL 6825681, at *3 (S.D.N.Y. Nov. 20, 2020) ("This Court agrees with the chorus of other courts across the country that have concluded that § 1158(d)(7) of the INA bars Plaintiff from claiming any legally enforceable right to have his application adjudicated within the provided timeframes."); *Xu v. Cissna*, 434 F. Supp. 3d 43, 52 (S.D.N.Y. 2020) ("Plaintiff has no statutory right to sue Defendants based upon their failure to adjudicate her asylum claim within the time frame laid out in § 1158(d); the Court would lack subject matter jurisdiction over such a claim.").

Plaintiff's argument to the contrary fails. Plaintiff argues that he has a legally enforceable right because he is within the zone of interests to be protected by the statute. *See* Mem. of L. in Supp. of Mandamus ¶ 13, ECF No. 7. This argument fails because the statute unambiguously declines to create any enforceable procedural right to adjudication of an asylum application within a specific time. Because Plaintiff has not established a clear right to the relief he seeks, his application for a writ of mandamus is denied.

**C.  APA Claim**

Plaintiff also claims that Defendants' failure to act on his asylum application constitutes a violation of the Administrative Procedures Act (the "APA"). *See* Compl. ¶¶ 35-38. The Government moves to dismiss the APA claim for failure to state a claim. *See* ECF No. 10. The Government's motion is granted for the reasons given below.

The APA allows courts to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).  To determine if agency action was unreasonably delayed, courts apply the factors given in *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70 (D.C. Cir. 1984) ("*TRAC*").  *See Nat. Res. Def. Council, Inc. v. U.S. FDA*, 710 F.3d 71, 84 (2d Cir. 2013) (noting that *TRAC* "set[s] forth [the] test for determining if agency action is unreasonably delayed").  The *TRAC* factors are:

> (1) [T]he time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*TRAC*, 750 F.2d at 80.  "Although no single factor is dispositive, the first and fourth factors generally carry the most weight."  *Qi v. USCIS*, No. 23 Civ. 8843, 2024 WL 2262661, at *5 (S.D.N.Y. May 17, 2024).

The *TRAC* factors, taken together, counsel against a finding of unreasonable delay in this case.

### 1. The First and Fourth *TRAC* Factors

The Court begins its analysis with the most significant *TRAC* factors: the first (whether the time for agency action is governed by a rule of reason) and the fourth (the effect of expediting action on agency activities).

As to the first *TRAC* factor, courts in this Circuit have consistently held that USCIS's use of a LIFO scheduling system—"scheduling asylum interviews for recent applications ahead of older filings," *Konde v. Raufer*, No. 23 Civ. 4265, 2024 WL 2221227, at *2 (S.D.N.Y. May 16,

4

2024)—to process asylum cases is a rule of reason for purposes of the *TRAC* factors. *See, e.g.*, *id.* at *3 ("[T]he Court joins the chorus of judges in this Circuit finding that the time USCIS takes to adjudicate asylum applications through its LIFO policy is governed by a rule of reason." (collecting cases)); *Qi*, 2024 WL 2262661, at *5 ("[C]ourts, in this Circuit and elsewhere, have consistently held that the Last-In-First-Out system is a rule of reason for purposes of the first *TRAC* factor." (collecting cases)). Even though it is true that the LIFO rule "forces asylum applicants who filed earlier to bear the brunt of th[e] delays," courts have consistently held that the rule is "a reasoned attempt to address mounting issues with the asylum application process." *Xu*, 434 F. Supp. 3d at 53.

As to the fourth *TRAC* factor (the effect of expediting agency action), the Court joins others in this District that have declined to grant relief with respect to any one asylum application, even long-pending ones such as Plaintiff's, because of the effect that such relief would have on similar applications. *See, e.g.*, *id.* at 55 ("The effect of leapfrogging Plaintiff's application to the front of the line would do nothing to cure the deficiencies of the asylum application process; it would only harm other applicants, who are equally deserving of prompt adjudication."); *Konde*, 2024 WL 2221227, at *4 ("The Court . . . find[s] no basis to single out Plaintiff's case for expedited resolution, where so many are deserving of prompt adjudication."); *Chen*, 2020 WL 6825681, at *6 ("[G]ranting Plaintiff the relief he seeks would simply advance his application ahead of many others, including those of applicants who have been waiting as long, or longer, than Plaintiff."); *Ying Yu Liu v. Wolf*, No. 19 Civ. 410, 2020 WL 2836426, at *9 (S.D.N.Y. May 30, 2020) ("[W]ere this Court to grant Plaintiffs the relief they seek, Plaintiffs would simply move to the head of the line, leapfrogging other asylum applicants, and undermining USCIS's reasons for implementing the LIFO system.").

Plaintiff argues that Defendants' operation of a LIFO system is the real example of shuffling applications around in line, and suggests that granting injunctive relief would prevent this outcome. *See* Pl.'s Opp'n to the Mot. to Dismiss ¶ 19 ("Pl.'s Opp'n"), ECF No. 14 ("The Court should intervene and prevent USCIS from skipping the line and placing other Applications (subsequently filed) to the front of the line."). This argument fails first because, as discussed, USCIS has adopted the LIFO system as a rule of reason in response to the increase in asylum applications. *See Konde*, 2024 WL 2221227, at *4 ("Plaintiff's insistence that she is not cutting the line but rather trying to maintain the integrity of the line, . . . fails to persuade, as she merely attempts to substitute her own notion of integrity as to the asylum application process for that of the agency.").

### 2. The Remaining *TRAC* Factors

As to the second factor (the existence of a statutory timetable), as noted, Section 1158(d) includes timeframes for the processing of asylum applications, and provides that "final administrative adjudication of the asylum application, not including administrative appeal, shall be completed within 180 days after the date an application is filed." 8 U.S.C. § 1158(d)(5)(A)(iii). Plaintiff has already waited far longer than that. But, again, as noted, Section 1158(d) also has explicit language providing that its processing time periods are not enforceable. *See id*. § 1158(d)(7). The statutory time periods, therefore, do not counsel against finding that the LIFO system is a rule of reason.

As to the third factor (human health and welfare) and the fifth factor (the nature and extent of the interests prejudiced), Plaintiff alleges that, as a consequence of his uncertain status, he and his family are unable to plan for their future, and further notes the time and money he has spent on the asylum process. *See* Compl. ¶¶ 21-23; *see also* Pl.'s Opp'n ¶ 20 ("This delay has caused significant psychological and emotional distress. The uncertainty about his future,

combined with the trauma he has experienced in his home country, has exacerbated mental health issues such as anxiety, depression, and post-traumatic stress."); *id.* ¶ 22 ("The longer [Plaintiff] is left in a state of uncertainty, the harder it will be for him to establish a stable life, find employment, and build social connections."); *id.* ¶ 23 ("[T]he fact that [Plaintiff's] status in the United States is in limbo for years makes it difficult for [him] to find gainful employment and career development, since neither the company nor [Plaintiff] knows how long [he] will be both work authorized and allowed to stay in the United States."); *id.* ¶ 25 ("Long delays can lead to credibility concerns in the asylum process. As memories fade and circumstances change, Mr. Maxhuni might find it challenging to provide consistent and detailed accounts of his experiences, potentially impacting the credibility of his claim."); *id.* ¶ 26 ("His family is particularly affected by long delays."); *id.* ¶ 27 ("Extended delays can lead to a loss of hope and confidence in the asylum process.").

The Court is sympathetic and recognizes "how several years in limbo might generally take a toll on an asylum applicant." *Konde*, 2024 WL 2221227, at *4. But courts have consistently held that these burdens—at least as experienced thus far by Plaintiff—are not of the severity or kind that tilt the third and fifth *TRAC* factors in favor of asylum applicants seeking APA review. *See Punt v. USCIS*, No. 22 Civ. 1218, 2023 WL 157320, at *5 (D.D.C. Jan. 11, 2023) ("However understandable Punt's desire to see prompt adjudication of his petition, the hardships he asserts do not implicate the kinds of serious health and welfare interests to which the third and fifth *TRAC* factors are primarily addressed.") (collecting cases).

Finally, as to the sixth *TRAC* factor, Plaintiff does not allege any bad faith with respect to the delay in adjudicating his application, meaning it favors neither party. *See Qi*, 2024 WL 2262661, at *7 ("Plaintiff does not allege bad faith, unfairness, or other impropriety, so the sixth *TRAC* factor is neutral.").

\*   \*   \*

Taken together, the *TRAC* factors—in particular, the conclusion that USCIS's processing of asylum applications is governed by a rule of reason (the first factor), and the fact that granting relief in this case would only serve to leapfrog Plaintiff's application ahead of other applicants who also deserve prompt adjudication (the fourth factor)—point to the conclusion that Plaintiff does not, at least at this time, have a valid claim for relief under the APA.

**D.     Remaining Claims**

The Complaint also pleads a claim for a declaratory judgment, seeking a judgment that Defendants' delays in processing asylum applications are unconstitutional and violate the INA and APA.  Plaintiff fails to establish any entitlement to a judgment with respect to violations of the INA or APA for the reasons given above.  The Complaint and Plaintiff's opposition to the motion to dismiss do not articulate any theory of constitutional violation.  In the absence of such argument, Defendants' motion to dismiss the Declaratory Judgment Act claim is granted.

Finally, the Complaint seeks relief under the Equal Access to Justice Act ("EAJA").  In light of the dismissal of Plaintiff's other claims, the EAJA claim is dismissed.

**E.     Conclusion**

For the reasons given above, Plaintiff's application for a writ of mandamus is **DENIED** and Defendants' motion to dismiss the Complaint is **GRANTED**.

In so ruling, the Court notes that Plaintiff has now waited almost five years for a determination on his asylum application, a wait that he states—and which the Court does not doubt—has exerted a considerable toll on him and on his family.[2]  His situation is a far cry from

---

[2] Plaintiff is apparently far from alone.  According to the American Immigration Lawyers Association, as of June 2023, asylum seekers before USCIS have an estimated wait time of more than six years; those before the Executive Office of Immigration Review have an average wait

8

the 180-day period that Congress intended, and which USCIS continues to represent on its website as the timeline for decisions on asylum application. *See* U.S. Citizenship & Immigration Servs., *Questions and Answers: Affirmative Asylum Eligibility and Applications* (updated Sept. 11, 2023), https://perma.cc/F4B8-SG5L ("A decision should be made on your asylum application within 180 days after the date you filed your application unless there are exceptional circumstances.").

The dismissal is therefore "without prejudice to renewal, should Plaintiff's application for asylum remain pending without decision to an unreasonable degree." *Konde*, 2024 WL 2221227, at *5.

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 10 and to close the case.

SO ORDERED.

Dated: June 18, 2024
       New York, New York

DALE E. HO
United States District Judge

---

time of more than four years. *See* Amy Grenier, *High-Stakes Asylum: How Long an Asylum Case Takes and How We Can Do Better*, Am. Immigration Lawyers Ass'n, 16, 19 (June 14, 2023), https://perma.cc/JJ7R-UTVK.